IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STEPHANIE NALL,

        Plaintiff,

v.                                                    CIVIL ACTION NO. 2:13-cv-01526

C. R. BARD, INC.,

        Defendant.

MEMORANDUM OPINION AND ORDER
(Defendant's Motion for Partial Summary Judgment)

Pending before the court is the Motion for Partial Summary Judgment ("Motion") [ECF No. 19], filed by defendant C. R. Bard, Inc. ("Bard") on September 21, 2017. Plaintiff Stephanie Nall filed an Opposition to the Motion on October 5, 2017 [ECF No. 23] and on October 12, 2017, Bard filed a Reply [ECF No. 25]. As set forth below, the Motion is **GRANTED in part**, **DENIED in part**, and **RESERVED in part**.

I.  Background

This action involves an Oklahoma plaintiff implanted with the Align Urethral Support System and the Align TO Urethral Support System, mesh products manufactured by Bard, on October 20, 2011 in Columbia, Missouri. Short Form Compl. [ECF No. 1] ¶¶ 1–12. This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary

incontinence ("SUI"). In the seven MDLs, there are more than 28,000 cases currently pending, approximately 3,000 of which are in the C. R. Bard, Inc. MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I ordered the plaintiffs and defendants to submit a joint list of remaining cases in the Bard MDL, MDL 2187, with claims against Bard and other defendants where counsel has at least 20 cases in the Bard MDL. The list included nearly 3,000 cases. From these cases, I selected 333 cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 236, *In re C. R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10md-02187, Jan. 27, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Upon the creation of a wave, a docket control order subjects each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. I selected the instant civil action as a Wave 4 case.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the

court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the moving party may produce an affidavit to demonstrate the absence of a genuine issue of material fact. *See id.* The moving party, however, is not required to do so and may discharge this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also Pumphrey v. C.R. Bard, Inc.*, 906 F. Supp. 334, 336 (N.D. W. Va. 1995). If the moving party sufficiently points out to the court those portions of the record that show that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to come forward with record evidence establishing a genuine issue of material fact. *Pollard v. United States*, 166 F. App'x 674, 678 (4th Cir. 2006) (citing *Celotex, Corp.*, 477 U.S. at 325).

Should the burden shift, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. The nonmoving party must satisfy this burden of proof by

3

offering more than a mere "scintilla of evidence" in support of his or her position. *Id.* at 252. Likewise, conclusory allegations or unsupported speculations, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997). Summary judgment is therefore appropriate when, after adequate time for discovery, the moving party first discharges the initial burden and then the nonmoving party does not make a showing sufficient to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23.

### B.  Choice of Law

The plaintiff does not contest Bard's contention that Missouri choice-of-law principles apply to this case and that these principles compel the application of Missouri substantive law to the plaintiff's claims.

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the plaintiff did in this case, the court consults the choice-of-law rules of the state where the plaintiff was implanted

with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, the court will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). The plaintiff underwent the implantation surgery in Missouri. Thus, Missouri's choice-of-law principles guide the court's choice-of-law analysis.

Missouri courts employ "the most significant relationship" test to determine which state's substantive law to apply in a tort action. *Livingston v. Baxter Health Care Corp.*, 313 S.W.3d 717, 721 (Mo. Ct. App. 2010). Under this test, the court must evaluate the contacts of each interested state and determine which state "has the most significant contacts" with the lawsuit. *Id.* In doing so, the court must balance six factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id.*

Here, although the plaintiff resides in Oklahoma, she was implanted with the product at issue in Missouri, the alleged misconduct underlying most of her claims are claimed to have taken place in Missouri, and the relationship between the parties is centered in Missouri. Accordingly, I **FIND** that Missouri has the most significant relationship, and I apply Missouri's substantive law to this case.

III.  Analysis

Bard argues it is entitled to partial summary judgment on the plaintiff's failure to warn claims because she has failed to establish the requisite causation element. Bard also argues it is entitled to summary judgment on the plaintiff's manufacturing defect claims, breach of express and implied warranty claims, and her negligence claims to the extent she alleges negligent "marketing," "inspection," "packaging," and "selling" because these claims are without evidentiary or legal support.

### A. Conceded Claims

The plaintiff concedes the following claims: Count III (Strict Liability - Manufacturing Defect); Count V (Breach of Express Warranty); and Count VI (Breach of Implied Warranty). Accordingly, Bard's Motion regarding these counts is **GRANTED**.

### B. Failure to Warn

Under Missouri law, a plaintiff may initiate a failure to warn claim under a theory of negligence or strict liability, or both. *Spuhl v. Shiley, Inc.*, 795 S.W.2d 573, 577 (Mo. Ct. App. 1990). Regardless of his or her theory of liability, a plaintiff must establish injury as a result of the product's inadequate warning, i.e., causation. *See Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. 2011); *Spuhl*, 795 S.W.2d at 577. Missouri courts also adhere to the "learned intermediary doctrine," which breaks the causal link between a patient's injury and the alleged failure to warn "when the prescribing physician had substantially the same knowledge as an adequate warning from the manufacturer that should have been communicated to him." *Doe v. Alpha*

*Therapeutic Corp.*, 3 S.W.3d 404, 419-20 (Mo. Ct. App. 1999).

In moving for summary judgment, Bard contends that the plaintiff cannot demonstrate the requisite element of causation. Noting Missouri's adherence to the "learned intermediary doctrine," Bard argues that Dr. Raymond Foster, the plaintiff's treating physician, acknowledged that he would not have changed his treatment of the plaintiff had he received a more appropriate warning. Specifically, Bard cites to Dr. Foster's testimony that he did not rely upon the "instruction for use" ("IFU") with respect to the Align products, and would still recommend the same products to the plaintiff if she presented today with the same symptoms and evaluation she exhibited prior to her surgery. Memo. in Supp. Mot. to Dismiss at 7-8 [ECF No. 20] (citing Foster Dep. 33:12-34:11; 40:3-8; 110:10-16) (attached as Ex. B).

The plaintiff argues that the causal link between her injuries and Bard's breach of its duty to warn did not break "because Dr. Foster did not have substantially the same knowledge as an adequate warning from Bard." Opp. At 6. There remains a question of material fact, the plaintiff continues, because Bard knew of certain cautionary information contained in the Material Safety Data Sheet ("MSDS") associated with a polypropylene resin used in the manufacturing of the Align products, and did not relay that information to Dr. Foster. If Bard made Dr. Foster aware of this information, the plaintiff concludes, Dr. Foster would have altered his treatment plan.

In reply, Bard notes Dr. Foster's testimony after reviewing the MSDS in question, wherein he stated: "I would consider it to the extent that I might ask

7

somebody, like from Bard's corporation, what it means. I don't know that this means anything negative at all, actually." Reply at 5 (citing Foster Dep. 90:4-7).

"To show causation, a plaintiff must show that the absence of a warning was the proximate cause of the injury." *Moore*, 332 S.W.3d at 762. Here, Dr. Foster acknowledged that he did not consider the IFU before recommending the Align products to the plaintiff, and opined after reviewing the MSDS during his deposition that, at most, he would question a Bard representative. Whether the plaintiff can show that a proper warning would have affected Dr. Foster's conduct is, of course, speculative.

However, arguing that certain evidence indicates that a person would have acted in another way is by nature often speculative. *Id.* Therefore, the fact that the plaintiff's position appears speculative does not alone defeat her claims. Instead, under such circumstances, Missouri applies the "heeding presumption," which holds that "had an adequate warning been given, it would have been heeded." *Id.* at 763. Missouri courts, however, have not determined the presumptions application or scope in the presence of a learned intermediary. *Id.* As such, whether Dr. Foster would have altered his recommendation of the Align products if Bard provided an adequate warning is a question for a jury. Whether the heeding presumption transfers to a physician is a determination for the court on remand.

Accordingly, Bard's Motion on these points is **RESERVED** for trial.

### C. Negligence

Bard contends that the plaintiff's claims for negligent marketing, inspection, packaging and selling of the product fail for lack of evidence. The plaintiff argues that Bard misconstrues the nature of her negligence claims, and that her allegations regarding the inspection, marketing, labeling, packaging, and selling of the product comprise part of her general negligence claim, rather than distinct theories of recovery. In short, the plaintiff asserts that Bard failed to adequately study or test the safety of its mesh products, and then failed to provide sufficient information to physicians and patients regarding associated risks.

A review of the plaintiffs' Count I in the Master Complaint, Master Compl. ¶¶ 62–67, No. 2:10-md-2187 [ECF No. 199], reveals that the plaintiff asserted three distinct negligence theories under "Count I." The bulk of the Count I allegations make claims for negligent failure to use reasonable care in testing and inspecting the products. The other negligence allegations posit that Bard was negligent in "designing, manufacturing, marketing, labeling, packaging, and/or selling" the products. *Id.* at ¶ 64. Thus, the plaintiff's concern that Bard is misconstruing the plaintiff's negligence claim is meritless. Bard simply chose to address the plaintiff's different theories of negligence separately, a practice expressly permitted under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

Regardless, however, the plaintiff identifies in the record support sufficient to

9

create a genuine dispute of material fact regarding whether Bard breached a legal duty that caused the plaintiff's injuries in its "inspection, marketing, labeling, packaging, or selling" of the product. Accordingly, Bard's Motion on these points is **DENIED**.

### IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion for Summary Judgment [ECF No. 19] is **GRANTED in part** and **DENIED in part**. Bard's Motion is **GRANTED** with regard to the following claims: Count III (Strict Liability - Manufacturing Defect); Count V (Breach of Express Warranty); and Count VI (Breach of Implied Warranty). Bard's Motion is **RESERVED** with regard to the plaintiff's Failure to Warn claim, and **DENIED** in all other respects.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 23, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE